Scott E. Schutzman, Esq.  SBN 140962
LAW OFFICES OF SCOTT E. SCHUTZMAN
2124 Main Street, Suite 130
Huntington Beach, California 92648
Tel:  714-374-0099
Email:  schutzy@msn.com

Jeffrey A. Neiman, Esq.  *Pro Hac Vice*
MARCUS NEIMAN RASHBAUM & PINEIRO LLP
100 Southeast Third Avenue, Suite 805
Fort Lauderdale, Florida 33394
Tel:  305-400-4269
Email:  jneiman@mnrlawfirm.com

Attorneys for Petitioner, Sabena Puri

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SABENA PURI,<br><br>       Petitioner,<br><br>v.<br><br><br>UNITED STATES OF AMERICA,<br>       Respondent. | Case No. **2:20-cv-07270-RGK-AGR**<br><br>**PETITIONER'S RESPONSE TO GOVERNMENT'S MOTION TO DENY AND DISMISS PETITION** |

# <u>**TABLE OF CONTENTS**</u>

I.  Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  Issue for Decision at November 10 Telephonic Hearing . . . . . . . . . . 3

III.  Core Objections to the Summons . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    A.  The IRS has issued the Summons based upon a misrepresentation by the Indian Taxation authorities that they have exhausted all means available to obtain the requested information . . . . . . . . . . . . . 6

    B.  The Indian Authorities' circumvention of Indian process and related misstatements to the IRS suggest an improper purpose. . . . . . . 8

    C.  Puri is not an Indian tax resident and accordingly the U.S.–India Convention does not permit the subject summons. . . . . . . . . . . 10

IV.  Legal Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    A.  Under Powell and its progeny, the IRS has failed to meet its initial burden and Petitioner has come forward with sufficient facts to infer that an "appropriate reason" exists to quash the summons. . . . . . 11

    1.  The IRS has not made the required threshold showing of "good faith" as defined by Powell and Clarke. . . . . . . . . . . . . . . . . . . . . . . . . . 12

    2.  Petitioner has made a sufficient showing for the Court to infer that "appropriate grounds" exist to quash the IRS summons, entitling her to an evidentiary hearing and discovery. . . . . . . . . . . . . . . . . . . . . . 14

    B.  The summons exceeds the authorization set forth in the U.S.–India Convention. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    1.  By the Convention's own terms, Petitioner is not a tax resident of India and is not subject to Indian income tax on her US incomes and assets. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

    2.  The summons is unduly broad. . . . . . . . . . . . . . . . . . . . . . . . 24

V.  Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

1

# <u>TABLE OF AUTHORITIES</u>

2

## <u>Cases</u>

3

4 *Escobedo v. United States*
Case No. 12-cv-0471, 2013 WL 6058485 (S.D. Cal. 2013) . . . . . . . . . . . . . . . . . 23

5

6 *In re Fagerdala USA–Lompoc, Inc.*, 891 F.3d 848 (9th Cir. 2018) . . . . . . . . . . . . 4

7 *Lidas, Inc. v. United States*, 238 F.3d 1076 (9th Cir. 2001) . . . . . . . . . . . 13, 16, 17

8

9 *Mazurek v. United States*, 271 F.3d 226 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . 17

10 *People v. Weaver*, 909 N. E. 2d 1195 (N.Y. Ct. App. 2009) . . . . . . . . . . . . . . . . . 7

11

12 *Podd v. Commissioner*, T.C. Memo. 1998–418 . . . . . . . . . . . . . . . . . . . . . . . . . . 24

13 *Reisman v. Caplin*, 375 U.S. 440 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 12

14

15 *United States v. Church of Scientology of California*
520 F.2d 818 (9th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

16

17 *United States v. Clarke*, 573 U.S. 248 (2014) . . . . . . . . . . . . . . . . . . .. . . . . passim

18 *United States v. Goldman*, 637 F.2d 664 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . 15

19 *United States v. Jones*, 565 U.S. 400 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

20

21 *United States v. Powell*, 379 U.S. 48 (1964)  . . . . . . . . . . . . . . . . . . . . . . . . passim

22 *United States v. Stuart*, 489 U.S. 353 (1989) . . . . . . . . . . . . . . . . .11, 12, 16, 17, 20

23

24 *United States v. Wyatt*, 637 F.2d 293 (5th Cir. 1981) . . . . . . . . . . . . . . . . . . . . 5, 24

25 *Yeong Yae Yun v. United States*
Case No. 00-cv-06075, 2000 WL 33267334 (C.D. Cal. 2000) . . . . . . . . . . . . 11, 24

26

27

28

## Statutes

12 U.S.C § 3402. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

26 U.S.C. § 7609(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Convention Between The Government Of The United States Of America And
The Government Of The Republic Of India For The Avoidance Of Double
Taxation And The Prevention Of Fiscal Evasion With Respect
To Taxes On Income. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

## Other Authorities

Opinion of Mr. R.K. Goyal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22, 23, 24

Opinion of Ret. Chief Justice V.N. Khare (Indian Tax Discovery) . . . . . 7, 8, 10, 18

Opinion of Ret. Chief Justice V.N. Khare (Indian Tax Residency)

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19, 21, 22, 23, 24

Restatement (Second) of Contracts § 205 . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 13

## I.      **Introduction**

Petitioner Sabena Puri files this Response to the Government's Motion to Deny and Dismiss Petition [DE 16], which the Court is also treating as the Government's Opposition pursuant to the Court's Order re Briefing Schedule of October 13, 2020 [DE 20].

In its Motion, the Government suggests that the Court's role in a summons enforcement proceeding involving a treaty request is something akin to a rubber stamp over a rubber stamp.  If India tells the IRS that India acts in good faith and according to its laws, that is good enough for the IRS.  Then, if the IRS turns around and informs the Court that the IRS has acted in good faith in making this inquiry of India, that ends the Court's analysis and the summons must be enforced.  But this is not correct.  As this memorandum will explain, the Court performs an essential review function, even over summonses issued pursuant to a treaty request.

_First_, Courts will never countenance abuse of their process, even by foreign taxation authorities.  The Court accordingly retains the authority—and the duty—to quash a summons issued to harass, to gain leverage in a collateral dispute, or for any other improper purpose. This is so even though the Government is correct that the IRS has no threshold duty to inquire into the foreign nation's good faith in the first step of the applicable controlling analysis prescribed by _United States v. Powell_, 379 U.S. 48 (1964).

_Second_, the Court must consider whether the applicable tax treaty authorizes summons of the requested information.  Here, it does not.  The US–Indian Convention[1] only permits Indian taxation authorities to request information pertaining to taxes covered by the Convention.  But, by the Convention's own terms,

---

[1] The full, proper name of this Convention is the "Convention Between The Government Of The United States Of America And The Government Of The Republic Of India For The Avoidance Of Double Taxation And The Prevention Of Fiscal Evasion With Respect To Taxes On Income." For the sake of clarity, this memorandum will alternatively refer to it as "the U.S.–Indian Convention" or "the Convention."

1

Petitioner is not a resident of India for taxation purposes and accordingly is not subject to Indian income tax on her United States income.  (Indeed, during the years at issue she filed U.S. tax returns reporting and paying tax on her worldwide income, and did so without claiming an exclusion that would have been available to her if she were an Indian tax resident).  Further, the terms of the Convention incorporate U.S. overbreadth principles that apply here.

This memorandum will provide Petitioner Puri's legal arguments with respect to both these inquiries. Importantly though, Petitioner Puri need not conclusively establish the factual foundation of her arguments at this early stage. Petitioner Puri has requested an evidentiary hearing and limited discovery. Supreme Court and Ninth Circuit case law requires the Court to decline summary summons enforcement and grant Petitioner's request upon the threshold presentation of specific facts that plausibly suggest an abuse of process or other "appropriate ground" to quash the summons. See *United States v. Clarke*, 573 U.S. 248, 250 (2014); see also *United States v. Church of Scientology of California*, 520 F.2d 818, 824 (9th Cir. 1975). This memorandum will proceed in three parts. First, it will discuss the issue for the Court to decide at the November 10, 2020 telephonic hearing scheduled in this matter. In sum, the Court must decide whether Petitioner has "point[ed] to specific facts or circumstances" sufficient to entitle her to an evidentiary hearing or discovery. *Clarke*, 573 U.S. at 254. Second, this memorandum will briefly and directly state the heart of Petitioner's objections to the summons. And third, this memorandum will analyze these objections in light of the law on IRS summons enforcement, concluding that the summons should be quashed under the framework provided by *United States v. Powell*, 379 U.S. 48 (1968), and because the summons is not authorized by the U.S.–India Convention in the first instance.

## II.  <u>Issue for Decision at November 10 Telephonic Hearing</u>

The Court has set Puri's Petition for a telephonic and non-evidentiary hearing on November 10.  Before delving into the substance of the Petition, the specific matter for decision at this hearing should be addressed.

At this hearing, the Court must determine whether the Government has made the threshold showing required of it by *United States v. Powell*, 379 U.S. 48 (1964). If the Court determines that the Government has met this burden, it next considers whether Puri has come forth with allegations of specific facts sufficient to entitle her to an evidentiary hearing or limited discovery on whether appropriate grounds exist to quash the summons.  The Ninth Circuit case of *United States v. Church of Scientology of California*, 520 F.2d 818 (9th Cir. 1975) and the Supreme Court's recent decision in *United States v. Clarke*, 573 U.S. 248 (2014) provide the framework for determining when a petitioner is entitled to discovery in the summons enforcement context.  Because this issue may prove to be central to the Court's November 10 hearing, these cases are discussed in some depth.

In her Petition, Puri has asked the Court to permit her **limited discovery** and an **evidentiary hearing**. [See DE 1 at 11.] *Church of Scientology* and *Clarke* speak to when a Court must allow this relief. Both cases acknowledge that "discovery in a summons enforcement proceeding is the exception rather than the rule." *Church of Scientology*, 520 F.2d at 824; accord Clarke, 573 U.S. at 255. Nevertheless, a summons enforcement proceeding "is not ex parte but adversarial." *Clarke*, 573 U.S. at 253. Accordingly, the Supreme Court has held that some discovery is appropriate if a Petitioner can point to specific facts or circumstances plausibly raising an inference of a proper ground to quash the summons. *Id*. at 254. In the context of a petition to quash a summons based upon the IRS's bad faith, the Court in *Clarke* held as follows:

3

> As part of the adversarial process concerning a summons's validity, the taxpayer is entitled to examine an IRS agent when he can point to specific facts or circumstances plausibly raising an inference of bad faith. Naked allegations of improper purpose are not enough: the taxpayer must offer some credible evidence supporting his charge. But circumstantial evidence can suffice to meet that burden; after all, direct evidence of another person's bad faith, at this threshold stage, will rarely if ever be available. And although a bare assertion or conjecture is not enough, neither is a fleshed out case demanded: the taxpayer need only make a showing of facts that give rise to a plausible inference of motive.

*Id.*

This rule is couched in terms of bad faith, and some explanation of this term is accordingly appropriate.  The meaning of "bad faith" varies depending upon context.  For example, in the bankruptcy context, the Ninth Circuit has defined the term as a creditor's "attempting to obtain some benefit to which it was not entitled." See *In re Fagerdala USA–Lompoc, Inc.*, 891 F.3d 848, 856 (9th Cir. 2018). In the context of a contract, the Restatement (Second) of Contracts § 205 observes that it includes "evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance."

With respect to IRS summons enforcement, the Supreme Court has provided further guidance. The Supreme Court in *Clarke* has defined the IRS's good faith (the mirror image of "bad faith") as coextensive with the *Powell* factors. The Court held: "More specifically, that means establishing what have become known as the Powell factors: 'that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the [IRS's] possession, and that the administrative steps required by the [Internal Revenue] Code have been followed." 573 U.S. at 250. Accordingly, in the summons enforcement context, a petitioner alleges that the IRS has acted in bad faith at least whenever he or she alleges that the IRS has failed to honor its obligations under *Powell*.  That said, the Supreme Court in Clarke observed that a

Petitioner may seek to quash a summons upon additional grounds.  Per *Clarke* a taxpayer may "urge the court to quash the summons 'on *any appropriate ground*.'" 573 U.S. at 250. (emphasis added) (quoting *Reisman v. Caplin*, 375 U.S. 440, 449 (1964)); *accord United States v. Church of Scientology*, 520 F.2d 818, 821 ("It is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused."). One ground for which quashing is an appropriate response applies when the revenue agency is unable to demonstrate that it has a "realistic expectation rather than an idle hope that something might be discovered" relevant to the taxpayer's income tax liabilities as a result of the request.  *United States v. Wyatt*, 637 F.2d 293, 300–301 (5th Cir. 1981).

The Ninth Circuit's decision in *Church of Scientology* and its progeny— which predate the Supreme Court's *Clarke* decision—provides some further guidance as to when discovery or an evidentiary hearing is appropriate. There, the Court observed, because a summonee "bears the burden of proving bad faith harassment or other abuse, we think that the summonee must be afforded at least some opportunity to substantiate its allegations."  *Church of Scientology*, 520 F.2d at 824.  Accordingly, the Ninth Circuit stated that a hearing should be held at which a Petitioner could subpoena and examine IRS witnesses. *Id.* "If, at the end of the hearing, there remains a substantial question in the Court's mind regarding the validity of the government's purpose, it may then grant discovery." *Id*.

Accordingly, the inquiry at the November 10 hearing is two-fold.  The Court determines whether the Government has made the threshold showing required of it under *Powell*.  If so, the Court moves to the next step of its analysis and determines whether Puri "can point to specific facts or circumstances plausibly raising an inference of" an appropriate ground to quash the IRS summons. See *United States v. Clarke*, 573 U.S. at 230.  If so, the Court may require an evidentiary hearing at which Petitioner shall have the opportunity to examine Government witnesses.  And

if questions remain after this hearing, Puri should be afforded the opportunity to take formal discovery on these issues.

With this inquiry in mind, Petitioner now turns to the heart of her objection to the summons.

## III.  Core Objections to the Summons

Petitioner's objections are three-fold.  First, the IRS has issued the summons based upon the inaccurate statement by Indian authorities that they have exhausted the means reasonably available to them to request the information under domestic Indian law.  In reality, they have done nothing—they have not even asked Petitioner for the information they seek.  Second, the Indian authorities' leap directly to attempting to summons sixteen years' worth of Petitioner's bank statements suggests that their request is made for an improper purpose beyond determination of Petitioner's tax liabilities.  And third, Petitioner is not a tax resident of India under the Convention. This both supports her belief that the summons has been issued for some other, improper purpose, and renders the summons unlawful under the U.S.–India Convention.

### A.   The IRS has issued the Summons based upon a misrepresentation by the Indian Taxation authorities that they have exhausted all means available to obtain the requested information.

India's taxation authorities have misstated the facts of this case to obtain enforcement of this summons.  Specifically, Paragraph 11 of the Declaration of Margaret O'Connor (Director of Treaty Administration in the Large Business and International Division of the IRS) relays the following representation: "The EOI Request states that the Indian tax authorities have exhausted all means available in their country to obtain the requested information, except those that would give rise to disproportionate difficulty." [DE 16-2 at ¶11.]

This statement by the Indian authorities is simply not true.  Rather, the Indian authorities have done nothing to gather the information they request beyond seeking the summons at issue in this case.  **Most importantly, and as Puri can very credibly attest, the Indian authorities have not even asked her for the information that they believe that they need to make the tax determinations at issue.**  [Puri Decl., Ex. 1 at ¶5.]  Indian law allows for such requests.  [Puri Decl., Ex. 1 at ¶¶6–8.][2]  But they simply have not been made.  Instead, the Indian taxation authorities have moved straight to seeking Puri's bank records directly from Citibank.

The requested records include "monthly account statements" for the last sixteen years, from April 1, 2003 through March 31, 2019.  It is hard to overemphasize how invasive this request is.  Puri is a United States citizen.  She is 52 years old.  She has studied, lived, and worked in the United States for most of her adult life.  Puri moved to the United States in 1992.  The accounts covered by the summons are her primary U.S. bank accounts.  The request accordingly seeks the details (including date, payee, and amount) of nearly every financial transaction that Puri has made for the past sixteen years.  Additionally, certain of the responsive accounts are jointly held with Puri's family members and implicate their privacy rights as well.

The intimate nature of this request recalls to mind language from *People v. Weaver*, 909 N. E. 2d 1195 (N.Y. Ct. App. 2009), quoted favorably in Justice Sotomayor's concurrence in *United States v. Jones*, 565 U.S. 400 (2012).  That case concerned GPS monitoring of vehicles on public roads.  But the concerns expressed

---

[2] The availability of these sorts of discovery devices to Indian Tax Authorities is obvious to anyone familiar with Indian tax administration.  However, for the benefit of the Court, Petitioner has obtained a legal opinion to this effect from Justice (Ret.) Vishweshar Nath Khare, a former Chief Justice of the Supreme Court of India. This opinion is attached to this Response as **Exhibit 2** and authenticated and discussed in Puri's Declaration, attached to this Response as **Exhibit 1**.

in Sotomayor's *Jones* concurrence are no less true of the bank records at issue in this case.  Disclosed in a person's bank records could be things "the indisputably private nature of which takes little imagination to conjure: trips to the psychiatrist, the plastic surgeon, the abortion clinic, the AIDS treatment center, the strip club, the criminal defense attorney, the by-the-hour motel, the union meeting, the mosque, synagogue or church, the gay bar and on and on." *Id*. at 415.  The production of an individual's bank statements accordingly constitutes an intimate look at the most private aspects of that person's life.[3]  It far exceeds the scope of information that could be legitimately required to determine Petitioner's Indian tax liabilities were she an Indian resident for taxation purposes.

This invasive nature of this request would be substantially mitigated if the Indian taxation authorities would do what they have effectively told the IRS they already did: use the procedures available to them under Indian law and request the information directly from Petitioner Puri.  Indian law allows for this. [Puri Decl., Ex. 1 at ¶6–8; Khare Op., Ex. 2 at ¶2.1.1.]  Upon receipt of such a request, Puri could engage Indian counsel and work with the Indian authorities to provide them the information that they needed while still maintaining Puri's privacy interests in information they did not require. There is no reason to believe that Petitioner would not engage in this process in good faith.

**B.    The Indian Authorities' circumvention of Indian process and related misstatements to the IRS suggest an improper purpose.**

The Indian authorities' rush to obtain a complete set of Puri's bank records for the past sixteen years raises the plausible inference that a purpose of the

---

[3] Petitioner's counsel emphasizes that the list of items included from the *Jones* case is a hypothetical illustration by the Supreme Court, used to illustrate the kinds of intimate information that bank records in general may contain, and why bank records, generally, are entitled to protection.  This recitation is, emphatically, not a statement of the kinds of information that Petitioner's records actually include.  Petitioner lives a more subdued life.  But she is no less entitled to privacy.

summons is to obtain material ripe for use in a campaign of political harassment. Such an improper purpose is a separate and independent ground to quash the summons.

This is not wild-eyed speculation on Petitioner's part. As set forth in Puri's Petition, her family is active and prominent in Indian politics. Specifically, her family includes a leader of the Indian National Congress, a storied political party in India that is now out of government and the chief opposition to the ruling BJP party. [Puri Decl., Ex. 1 at ¶13.] The BJP has come under fire for precisely the sort of conduct Puri's petition suggests: using the Indian government's taxation authorities to harass its political opposition. [Id. at ¶14.][4] The sort of intimate details of a person's life revealed by sixteen years of bank statements have little bearing on that person's tax liabilities. But when it comes to political harassment, they are grist to the mill.

Additionally, the IRS's representation that the Indian authorities have told the IRS that "any information exchanged will only be used for the purposes identified in Article 28 of the U.S.–India Convention" [DE 16-2 at ¶14] and "be disclosed only to persons or authorities . . . involved in the [administration] of taxes which are subject to [sic] the Convention" [id.] is of no comfort. The Indian authorities have already made misstatements to the IRS that they had reasonably "exhausted all means available in their country to obtain the requested information." [*Id.* at ¶11.] There is no reason to entitle this representation to any more weight.

---

[4] As an indication of the polarized and highly-charged atmosphere in India, persecution of political opponents of the ruling BJP party has been extended to numerous domains, including social media such as Facebook, as was reported by the Wall Street Journal in an August 14, 2020 article titled "Facebook's Hate-Speech Rules Collide With Indian Politics," reporting on the ruling party's inappropriate leverage over the social media platform's hate speech and content-policing policies to illegitimately favor its domestic agendas and persecute opponents. This article is included as part of **Exhibit 5** to this Response.

The Indian taxation authorities regularly fail to honor these secrecy obligations.  Germany and the United Kingdom have lodged formal protests over India's failure to safeguard tax treaty information.  [Puri Decl, Ex. 1 at ¶¶9–11; Khare Op., Ex. 2 at ¶2.2.7]  In comparison to Federal law in the United States, Indian law provides for the regular sharing of information between India's tax authorities and other government components.  [Puri Decl., Ex. 1 at ¶11; Khare Op., Ex. 2 at 2.2.6.]  Indeed, earlier this year the Indian taxation authority signed a memorandum of understanding with the Indian equivalent of the U.S. Securities and Exchange Commission that makes information sharing automatic with non-tax administration authorities, which is prohibited under the U.S-India Convention. [*Id*.]

## C. <u>Puri is not an Indian tax resident under the Convention and accordingly the U.S.–India Convention does not permit the subject summons.</u>

Finally, Petitioner Puri is not a tax resident of India and is not subject to Indian tax on her United States income.  This is relevant for two reasons.  First, it constitutes another misrepresentation upon which the summons has been issued and further suggests that the summons is issued for an improper purpose.[5]  Second, U.S.–India Convention permits India to obtain information only as it relates to Indian tax residents.  The rules of tax residency for purposes of the Convention appear within the treaty at Article 4 and are accordingly properly an issue of U.S. law for this Court to determine.  Because Petitioner is not an Indian tax resident under Article 4 of the Convention, the Convention does not authorize the summons that the IRS has issued.

---

[5] *See* O'Connor Decl., DE 16-2 at ¶7 ('The EOI Request states that Sabena Puri was a tax resident of India during the tax periods under examination.").  Petitioner recognizes that, as this is a somewhat nuanced question of law, this misapprehension is far less culpable than the Indian Taxation Authorities' representation that they have exhausted domestic legal procedures available to obtain the requested information.

## IV.    <u>Legal Analysis</u>

This memorandum now analyzes these objections in light of the legal framework under which a Court will quash an IRS summons under 26 U.S.C. § 7609(b) and controlling case law.  Specifically, Petitioner urges the Court to quash the summons for two reasons.

<u>*First*</u>, quashing the summons is appropriate under the analytical framework that the Supreme Court set forth in *United States v. Powell*, 379 U.S. 48 (1964) and its progeny.  The Government has failed to meet its initial burden to establish its "good faith" in issuing the summons, as that term is defined in this context. Even if the Government has made this required initial showing, Petitioner has articulated specific facts that raise the plausible inference that appropriate grounds exist to quash the summons, entitling her to discovery under *Clarke*, 573 U.S. at 250 and *Church of Scientology*, 520 F.2d at 824 (9th Cir.).

<u>*Second*</u>, the Court must also looks to whether the summons was issued "pursuant to the terms of the Convention" in the first instance. *Yeong Yae Yun v. United States*, Case No. 00-cv-06075, 2000 WL 33267334, at *1 (C.D. Cal. 2000). Here, the IRS's summons exceeds its authorization under the U.S.–India Convention because Petitioner is not a tax resident of India as defined at Article 4 of the Convention, and the summons is unduly broad.

> **A.    <u>Under Powell and its progeny, the IRS has failed to meet its initial burden and Petitioner has come forward with sufficient facts to infer that an "appropriate reason" exists to quash the summons.</u>**

A district court evaluates a petition to quash an IRS summons under 26 U.S.C. § 7609(b) pursuant to the Supreme Court's directions in *United States v. Powell* and its progeny.  See *United States v. Stuart*, 489 U.S. 353, 356 (1989). This analysis applies with equal force to IRS summonses issued pursuant to a domestic tax investigation and those that are issued pursuant to a treaty request by a foreign state. *Id*. at 361.

The Supreme Court recently reaffirmed and rearticulated the <u>Powell</u> analysis in *United States v. Clarke*, 573 U.S. 248 (2014). In a summons enforcement proceeding, the IRS bears the initial burden of showing that it issued the summons in good faith. *Id*. at 250 (quoting *Stuart*, 489 U.S. at 359). The term "good faith" has no set definition. Its meaning is typically context dependent. The *Clarke* Court, however, provided guidance to district courts in summons enforcement proceedings. The Court held that "good faith" in this context "means establishing what have become known as the *Powell* factors: 'that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the [IRS's] possession, and that the administrative steps required by the [Internal Revenue] Code have been followed.'" *Id*. (quoting Powell, 379 U.S. at 57–58). "To make that showing, the IRS usually files an affidavit from the responsible investigating agent." *Id*.

Upon making that showing, the analysis does not end, however. If the IRS meets its initial burden, the taxpayer "has an opportunity to challenge that affidavit, and to urge the court to quash the summons 'on any appropriate ground.'" Clarke, 573 U.S. at 250 (citing *Reisman v. Caplin*, 375 U.S. 440, 449 (1964)). This includes an improper purpose and invasion of privilege and privacy rights enjoyed by the subject of the summons and third parties. *Reisman*, 375 U.S. at 513–14.

### 1. The IRS has not made the required threshold showing of "good faith" as defined by *Powell* and *Clarke*.

Here, it is doubtful that the IRS has made even the threshold showing that Powell and Clarke require. The IRS has produced affidavits from IRS employees Margaret O'Connor [DE 16-2] and Hung Pham [DE 17] in support of enforcing the summons. These affidavits attest that the IRS has done little more than rubber-stamp the Indian authorities' request. Essentially, they state that (1) the IRS has received an Exchange of Information ("EOI") Request from the Republic of India for Petitioner's bank records—including monthly account statements—at Citibank,

N.A., for the periods from April 2003 through 2019 [DE 16-2 at ¶8; DE 17 at 12]; (2) then, after the Petitioner was filed, the IRS asked these Indian tax authorities if "there is a continuing need for the information identified in the EOI Request" and the Indian authorities have responded in the affirmative [DE 16-2 at ¶12]; and (3) based upon this representation, the IRS has summonsed the requested information [DE 17 at 4].

However, pursuant to the Supreme Court's direction in *Clarke*, good faith under Powell requires more.  The IRS must not merely state that that the investigation is conducted for a legitimate purpose and that the information sought is relevant to that purpose.  The IRS must establish these facts. See *Clarke*, 573 U.S. at 250 (referring to the IRS's obligation as one of "establishing," "demonstrat[ing]" and "showing" these facts).  It is true that "the IRS need not establish the good faith of the requesting nation." *Lidas, Inc.v. United States*, 238 F.3d 1076, 1082 (9th Cir. 2001).  But this is the case only "so long as the IRS itself acts in good faith [under *Powell*]." *Id*.  This good faith requires the IRS to establish that the summons seeks information relevant to an investigation undertaken for a legitimate purpose. This implies a modicum of diligence.  *See* Restatement (Second) Contracts § 205 (defining bad faith to include "lack of diligence and slacking off").  This good faith requirement does not allow the IRS to simply rubberstamp a requesting nation's representations.

But that is exactly what the IRS has done here.  The stunning breadth of the information the summons requests is obvious on its face.  Notably, it seeks 16 years of Petitioner's bank statements.[6]  But no one at the IRS seems to have flagged it as an issue of concern.  The affidavits that the IRS has submitted do not indicate that

---

[6] Bank statements and other financial records are specifically protected from disclosure to government authorities by the 12 U.S.C § 3402, which codifies protections under the Right to Financial Privacy Act of 1978.  The Act permits disclosure pursuant to a lawful summons.  But the protected status of these records should inform the court's analysis of whether the IRS's superficial inquiry satisfied its obligations of good faith.

anyone at the IRS asked the Indian authorities why they needed Petitioner's monthly bank statements for such an extensively long period. [See DE 16-2; DE 17]

Additionally, the affidavits reveal no inquiry to India concerning why India needed to obtain this information directly from Citibank rather than from Petitioner. [*Id.*] Were the documents requested from Petitioner, she would have the ability to work with the Indian authorities on providing them responses that would satisfy their need for information while maintaining her privacy rights. Instead, the IRS's affidavits reveal merely that the Indian authorities asked for the requested information, that the Indian authorities have stated that they had an open investigation that the information relates to it, and that IRS has in turn issued the subject summons for this information. [DE 16-2 at ¶¶6–9.]

Again, *Powell* and its progeny do not require the court to pass upon India's good faith in opening a tax investigation and making a request for information under a double taxation treaty. But *Powell* does require the Court to determine whether the IRS has shown that it fulfilled its own obligation to determine whether the requested information is relevant to a legitimate tax investigation. 379 U.S. at 57–58. Here, the IRS's affidavits make no such showing.

### 2. **Petitioner has made a sufficient showing for the Court to infer that "appropriate grounds" exist to quash the IRS summons, entitling her to an evidentiary hearing and discovery.**

Even assuming that the IRS has met its initial burden to establish that its summons is appropriate under the *Powell* factors, the Court should still decline to summarily enforce it. "It is the court's process which is invoked to enforce [a] summons and a court may not permit its process to be abused." *United States v. Powell*, 379 U.S. 48, 58 (1964); *United States v. Church of Scientology of California*, 520 F.2d 818, 821 (9th Cir. 1975). "Such an abuse would take place if the summons has been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other

purpose reflecting on the good faith of the particular investigation." *Powell*, 379 U.S. at 58. An illegitimate purpose includes where the revenue agency merely asserts but fails to actually demonstrate relevance. *United States v. Goldman*, 637 F.2d 664, 667–68 (9th Cir. 1980) (upholding the district court's judgment that the government had not met its burden to show that the records in question were relevant).

Assuming that the Government has made a prima facia showing under *Powell*, a Petitioner then "has an opportunity to quash the summons 'on any appropriate ground'—including, as relevant here, improper purpose." *United States v. Clarke*, 573 U.S. 248, 250 (2014). Importantly, at this early stage, "a fleshed out case is not demanded." *Id*. at 254. Rather, a petitioner "need only make a showing of facts that give rise to a plausible inference of improper motive" or other appropriate ground. *Id*. As this section will demonstrate, Petitioner has made such a showing here.

Before further addressing the Petitioner's facts, however, this memorandum will address a threshold issue of law: the relevance of India's alleged bad faith and improper purpose to this inquiry. As set forth below, the better reading of the law is that a requesting nation's improper purpose is salient. This is the only interpretation that squares with the fundamental principle that a Court will not permit an abuse of its process to enforce a summons. *See Powell*, 379 U.S. at 58; *Church of Scientology*, 520 F.2d at 821.

Regardless of the Court's conclusion on this issue, however, Puri has met her burden under *Powell*'s second step. She has pointed to facts that raise a plausible inference of the Indian taxation authorities' improper purpose for requesting the summons. And she has pointed to facts that show the IRS has likewise failed to exercise good faith by failing to engage in any diligence concerning this purpose.

### a.   <u>A requesting nation's bad faith is relevant at this stage.</u>

At this second stage of the Powell analysis, the Court can and should consider not only the IRS's good faith in evaluating the summons, but also the foreign nation's purpose in making the request.  The court's instruction is that it "may not permit its process to be abused."  *Powell*, 379 U.S. at 58.  This is so regardless of the source of the abuse.  In its supporting memorandum, the Government cites several cases for the proposition that "the good faith of the requesting country is not relevant." [DE 16 at 11.]  Petitioner agrees that this proposition is correct with regards to the IRS's prima facia case under *Powell*'s first step. But it is wrong to suggest that a requesting country's improper purpose is *never* relevant, even under *Powell*'s second step.  Such a rule would require the Court to turn a blind eye to abusive requests, contrary to *Powell* and *Church of Scientology's* instruction. See also *Clarke*, 573 U.S. at 253 (a summoned party "may present argument and evidence on all matters bearing on a summons's validity").

Each of the Government's cases rely, ultimately, on the Supreme Court's statement in *United States v. Stuart* that "the IRS need not attest" to a Canadian authority's good faith before a court will enforce a summons issued pursuant to a U.S.–Canadian tax treaty. 489 U.S. 353, 370 (1989).  But *Stuart* was decided only under *Powell*'s first step.  It reversed a judgment of the Ninth Circuit that held that "'in order to establish its prima facia case by affidavit, the IRS must make an affirmative statement' that Canadian authorities are acting in good faith." *Id*. at 359 (emphasis added). *Stuart* does not render an improper purpose by the requesting nation irrelevant at both stages of the Powell inquiry.

The Government additionally cites to *Lidas, Inc. v. United States*, 238 F.3d 1076 (9th Cir. 2001).  Because *Lidas* is the controlling law of this Circuit, Petitioner addresses it directly.  In *Lidas*, the Ninth Circuit cited *Stuart* for the proposition that "the IRS need not establish the good faith of the requesting nation." *Id*. at 1082.  But

it likewise did not pass on whether the requesting nation's purpose was relevant to the second step of the *Powell* inquiry.  The primary issue in *Lidas* was whether the U.S.–France treaty was constitutionally permissible absent implementing legislation assented to by the House of Representatives. *Id*. at 1079.  The taxpayer's only argument under *Powell*'s second prong was that "the IRS summons sought their financial information for the improper purpose of disclosing such information to French authorities" even though such disclosure was purportedly prohibited by the Right to Financial Privacy Act. *Id*. at 1082–83.  The Court rejected this contention upon concluding that it inaccurately interpreted the RFPA. *Id*. at 1083.  The Court did not hold that a requesting nation's purpose was irrelevant to *Powell*'s second step.

Certain non-controlling cases cited by the Government do go this far, however.  The Fifth Circuit's decision in *Mazurek v. United States,* 271 F.3d 226 (5th Cir. 2001) is the most notable.  There, the Fifth Circuit considered a case in which the taxpayer argued—under *Powell*'s second step—that French authorities requested his tax information for an improper purpose.  Citing *Stuart*, the Fifth Circuit held it was proper to disregard this argument.  Per the Fifth Circuit, it was incorrect to "focus[] on the legitimacy of the [French Taxing Authorities'] investigation, not on the legitimacy of the IRS's compliance with the FTA's request." *Id*. at 231.[7]

But, as observed above, *Mazurek* is based upon a flawed premise.  *Stuart* does not hold that a foreign nation's purpose is *never* relevant under *Powell*.  Rather, *Stuart* concerned only the first step of *Powell*'s analysis—whether the IRS bears the burden of demonstrating the foreign nation's good faith in the first instance. Interpreting *Stuart* to render a foreign nation's bad faith irrelevant at any stage of the

---

[7] *Mazurak* underlies the remainder of the supportive decisions the Government cites.

*Powell* analysis would eviscerate *Powell's* admonition that Courts may never permit an abuse of their process. 379 U.S. at 58; *accord Church of Scientology*, 520 F.2d at 821.

> **b.** **Petitioner has made her required showing with respect to both India and the IRS.**

Here, Petitioner has come forth with facts plausibly suggesting a lack of good faith on the part of both India and the IRS. Petitioner has shown at least the following:[8]

- The summons is extraordinarily broad. It seeks sixteen years of bank statements from her primary bank accounts, which will detail virtually all her financial transactions for a significant portion of her adult life. [Puri Decl., Ex. 1 at ¶12.]

- The Indian authorities represented to the IRS that they have exhausted all reasonable means of obtaining the information under India domestic process. [DE 16-2 at ¶11.]

- This representation is not true. The Indian authorities have done nothing to obtain this information under Indian domestic process. [Puri Decl., Ex. 1 at ¶5.] The Indian authorities have not even requested the information directly from Petitioner. [Id.] Ample discovery devices exist under Indian law that would permit the Indian tax authorities to obtain this information. [Puri Decl., Ex. 1 at ¶6–8; Khare Op., Ex. 2 at ¶2.1.1.]

- Petitioner's family includes a prominent leader of this opposition. [Id.] And the Indian government has regularly been accused by the Indian Press of using the Indian taxation authorities to harass their political opponents. [Puri Decl., Ex. 1 at ¶12–14; Ex. 5.]

---

[8] Petitioner additionally refers the Court back to the statement of facts in Section III of this Response.

- Indian tax authorities regularly fail to safeguard the disclosure of tax information. Rather, the Indian tax authorities systematically share this information with other government agencies, and this has led to complaints under tax conventions between the United Kingdom and Germany. [Puri Decl., Ex. 1 at ¶9–11; Khare Op., Ex. 2 at ¶2.2.]

- Petitioner is not a tax resident of India subject to Indian taxation on her United States income under the U.S-India Convention. [Puri Decl., Ex. 1 at ¶15–19; Khare Op., Ex. 3.]  There exists no underlying Indian tax liability to which summonsed bank records would legitimately relate.

- The IRS has done nothing to investigate the appropriateness of India's information request. Instead, they simply took the request at face value [DE 16-2 at ¶¶1–11.]

These facts raise the plausible inference that appropriate grounds exist to quash the IRS summons, entitling Puri to further discovery or an evidentiary hearing under *Clarke* and *Church of Scientology*.  They plausibly suggest that the Indian taxation authorities have sought the summons for the improper purpose of harassing Petitioner and her family.  They plausibly suggest that the IRS has failed to exercise good faith, including appropriate diligence, in issuing the summons.  Finally, to the extent that the Indian taxation authorities have made misrepresentations to obtain issuance of the summons, its enforcement would constitute an abuse of the Court's process.  Thus, facts that plausibly suggest such a misrepresentation adequately raise another "appropriate ground" to quash the summons.

This inference of an improper purpose is especially strong where the revenue agency requests broad swathes of information the relevance of which has not been demonstrated, for example because the requested information does not pertain to particularly transactions or any tax returns at issue.  See *United States v. Matras*, 487 F.2d 1271, 1275 (8th Cir. 1973) (articulating a definition of relevance under *Powell* that encompasses more than the government's sole convenience of need to

obtain a "road map" for further audits, and observing that if such open-ended requests were entertained, it would render nearly all taxpayer information susceptible to the government's review, without regard to the requirement that such requests are relevant and not unduly burdensome to taxpayers).

## B. The summons exceeds the authorization set forth in the U.S.–India Convention.

Apart from the *Powell* factors, another principle precludes enforcement of the subject summons.  Courts will decline to enforce a summons issued pursuant to an information sharing treaty if the request exceeds the scope of that treaty.  See *United States v. Stuart,* 489 U.S. 353, 361 (1989) (stating that even if *Powell* is satisfied, a court will not enforce a summons issued pursuant to a convention if that convention "imposes more stringent requirements").  Here, the summons does indeed exceed the scope of the US–India Convention.

Article 28, paragraph 1 of the U.S.–India Convention articulates the scope of its information-sharing provisions: "The competent authorities of the Contracting States shall exchange such information (including documents) as is necessary for the carrying out of the provisions of this Convention or of the domestic laws of the Contracting States concerning taxes covered by the Convention insofar as the taxation thereunder is not contrary to the Convention, in particular for the prevention of fraud or evasion of such taxes" (emphasis added).  Further, in no case shall the Treaty require a contracting state to exchange trade or professional secrets, or other information "the disclosure of which would be contrary to public policy."  Finally, any information exchanged shall be done so only  "in the same manner and in the same form as if the tax of the first mentioned State were the tax of that other State and were being imposed by that other State."

Here, the summons exceeds Article 28's authorization for at least the following two reasons.

**1.    By the Convention's own terms, Petitioner is not a tax resident of India and is not subject to Indian income tax on her US incomes and assets.**

As Paragraph 4 of Article 28 of the U.S.–India Convention states, exchange of information is permitted as necessary for carrying out the provisions of Convention or the domestic tax laws of a Contracting State, only "insofar as the taxation thereunder is not contrary to the Convention."  Pursuant to Article 4 of the Convention, notwithstanding the domestic laws of Contracting State, the exclusive tax residence of a taxpayer is allocated either to one Contracting State or the other—the taxpayer is not subject to taxation by both.  Where a taxpayer qualifies as a tax resident under the domestic laws of both the United States and India, Article 4, Paragraph 2 of the Convention provides a "tiebreaker" analysis to resolve this conflict and allocate the taxpayer.

Petitioner has sought and obtained legal opinions on her Indian tax residency status under the Convention from two respected Indian authorities. In response to the summons, she obtained the opinion of Justice (Ret.) Vishweshwar Nath Khare. Justice Khare is a former Chief Justice of the Indian Supreme Court, which occupies a place in the Indian legal system analogous to the United States Supreme Court. [Puri Decl., Ex. 1 at ¶7.]  A copy of Justice Khare's opinion on this issue is attached to this Response as **Exhibit 3**, and its authenticity is attested to in Petitioner's declaration. A year prior to the summons, in July 2019, Petitioner had also obtained an opinion from Mr. Raman Kumar Goyal. Mr. Goyal is a former Chief Commissioner of Income Tax for India [Puri Decl., Ex. 4 at ¶21], the equivalent of the Internal Revenue Commissioner in the United States. A copy of Mr. Goyal's Opinion is attached as **Exhibit 4** to this Response.[9]

---

[9] Both opinions are partially redacted to preserve sensitive information about Petitioner's family members, such as their places of employment and addresses.

Both Justice Khare and Mr. Goyal reach the same conclusion, through the same analysis under the Convention's tiebreaker provision: Petitioner is not a tax resident of India subject to Indian income tax on her United States income and is not required to disclose her United States assets in her Indian tax filings. This Response briefly summarizes their analysis.

As Justice Khare and Mr. Goyal observe, under each countries' respective legal tests, Petitioner is a tax resident of *both* India (under Indian law) and the United States (under U.S. law).  [Khare Op., Ex. 3 at ¶3.2 ("Under the domestic law of each of the India and U.S.A., the Querist [Petitioner] is treated as a tax resident."); Goyal Op, Ex. 4 at 10]. But the U.S.–India Convention exists (at least in part) to squarely address this issue. "Where that occurs, the Treaty breaks the tie with respect to residency so that for the purpose of the Treaty, Querist [Petitioner] is treated as tax resident of only one country." [Khare Op., Ex. 3 at ¶3.2; accord Goyal Op, Ex. 4 at 10 ("In order to resolve the issue, there is a provision under Article 4 of the Indo US DTAA.").]

Article 4, Paragraph 2, of the Convention provides the rule of decision. It "provides a test popularly known as a tiebreaker, allocating residence solely to one country or the other." [Khare Op., Ex. 3 at ¶3.2] As relevant here, Paragraph 2(a) states that a taxpayer "shall be deemed to be a resident of the State in which he has a permanent home available to him; if he has a permanent home available to him in both States, he shall be deemed to be a resident of the State with which his personal and economic relations are closer (centre of vital interests)."

Based upon facts provided to them by Petitioner and attested to in Petitioner's Declaration [see Puri Decl., Ex.1 at ¶¶18 & 22], Justice Khare and Mr. Goyal observed that Petitioner has permanent homes available to her in both India and the United States [Khare Op., Ex. 3 at ¶¶3.7–3.9.; Goyal Op, Ex. 4 at 10] Accordingly, they analyzed Petitioner's "center of vital interests" and determined that it lies within the United States. [Khare Op., Ex. 3 at ¶¶ 3.10–3.15; Goyal Op., Ex. 4 at 11–

13; 19–20.] By virtue of this fact, Justice Khare concludes that Petitioner "was not required to report her U.S.A. sourced incomes as well as assets based in U.S.A. in her tax filings in India as they are not relevant in ascertaining her Indian taxes." [Khare Op., Ex. 3 at ¶3.17.] Mr. Goyal likewise concludes that Petitioner is entitled to the more beneficial tax treatment provided for by the U.S.–Indian Convention. [Goyal Op., Ex. 4 at 23.]

This is so even though Petitioner erroneously filed Indian income tax returns as an Indian resident for Tax Year 2008 and Tax Years 2011–2017. Petitioner filed a rectification letter with the Indian Tax Authorities in the year 2018 requesting that the Petitioner be considered as a non-resident for all these years. This letter was filed two years before issuance of the summons at issue in this case. Indian tax returns for Financial Years 2017–18 and 2018–19 have been filed in the capacity of non-resident of India. Even if uncorrected, these prior returns would have no preclusive effect. See, *e.g., Casanova v. Comm'r*, 87 T.C. 214 (1986) (permitting taxpayer to more favorable treatment under tax treaty, even though he had previously not complied with all administrative filings); *Weible v. United States*, 224 F.2d 158 (9th Cir. 1957) (reaching a similar conclusion regarding the foreign earned income exclusion when his status as a resident of a foreign country for a period of twelve months was not claimed in tax returns for three consecutive years). Both Justice Khare and Mr. Goyal were aware of these prior returns and accounted for them in their analysis. [Khare Op., Ex. 3 at 13 (observing "tax returns for FYs were erroneously filed as a resident of India); Goyal Op., Ex. 4 at 9 (reflecting review of previously filed U.S. and Indian returns).]

Because the U.S.–Indian Convention is also part of U.S. law, this Court is of course also competent to interpret it and apply it to Petitioner's case. Petitioner has been able to identify only two such cases in which U.S. courts considered a taxpayer's "centre of vital interests" under a convention. In *Escobedo v. United States,* Case No. 12-cv-0471, 2013 WL 6058485 (S.D. Cal. 2013), the Court denied

a government motion for summary judgment in a tax refund suit because "multiple disputes of material fact exist regarding Plaintiff's 'center of vital interests'" under a similar treaty between the U.S. and Mexico. *Id*., at \*2. In *Podd v. Commissioner*, T.C. Memo. 1998–418, the United State Tax Court engaged in the "center of vital interests" analysis but was unable to reach a conclusion. Accordingly, the Tax Court applied a different tiebreaker rule.

Regardless, the analysis the Court should undertake is the same as that in which Justice Khare and Mr. Goyal engaged, and is based upon the same facts. Accordingly, the Court should reach the same result and for the same reasons. Because Petitioner is not a tax resident of India under the U.S.–India Convention, Article 28 of the Convention does not authorize the summons.

## 2. The summons is unduly broad.

Finally, the summons violates Article 28's limitations because of its extraordinary breadth.  Article 28 limits an information request to necessary information, available to an extent consistent with the providing state's laws, and respecting that state's public policy.  For this reason, district courts have reviewed summonses issue pursuant to treaty requests for overbreadth.  *See, e.g., Yeong Yae Yun v. United States*, Case No. CV 00-06075, 2000 WL 33267334, at \*4 (C.D. Cal. 2000).  In this context, "[o]verbreadth has been defined as '. . . out of proportion to the ends sought,' and '. . . of such sweeping nature and so unrelated to the matter properly under inquiry as to exceed the investigatory power.'" Id. (quoting *United States v. Wyatt*, 637 F.2d 293 (5th Cir. 1981)).

Here, again, the bank statements for Petitioner's primary bank accounts for sixteen years.  [Puri Decl., Ex. 1 at ¶12.]  This depth of information is out of proportion to the Indian Tax Authorities' proffered ends of establishing Petitioner's 2003–2019 Indian income tax liabilities. This inquiry does not require the detailed account of sixteen years' worth of transactions that the sought-after bank statements

would provide. This is especially so given that the Indian tax authorities have made no suggestion that Petitioner has engaged in any kind of obstruction or evasion and has not been asked for the necessary information directly.

## V.   Conclusion.

For the reasons set forth above, the Court should conclude that the IRS has failed to meet its initial burden under *Powell* and accordingly quash the summons. If, however, the Court concludes that the IRS has satisfied this threshold requirement, the Court should find that Petitioner has satisfied her burden to come forward with facts that plausibly suggest an appropriate ground upon which to quash the summons and either set this matter for evidentiary hearing or grant Petitioner's request for limited discovery.


Dated: October 22, 2020                    Respectfully Submitted,


                                           _____/s/ Scott E. Schutzman_____
                                           Scott E. Schutzman