1  Scott E. Schutzman, Esq. SBN 140962
2  LAW OFFICES OF SCOTT E. SCHUTZMAN
3  2124 Main Street, Suite 130
   Huntington Beach, California 92648
4  Tel: 714-374-0099
5  Email: schutzy@msn.com

6  Jeffrey A. Neiman, Esq. (PHV)
7  MARCUS NEIMAN RASHBAUM
   & PINEIRO, LLP
8  100 Southeast Third Avenue, Suite 805
9  Fort Lauderdale, Florida 33394
   Tel: 305-400-4269
10 Email: jneman@mnrlawfirm.com
11
12 Attorneys for Petitioner, Sabena Puri

13          **UNITED STATES DISTRICT COURT**
14          **CENTRAL DISTRICT OF CALIFORNIA**
15
   SABENA PURI,                    Case No. 2:20-cv-07270
16
17          Petitioner,            **OBJECTION TO REPORT**
                                   **AND RECOMMENDATION OF**
18 v.                             **MAGISTRATE JUDGE**
19
20 UNITED STATES OF
   AMERICA,
21
22          Respondent.
23
24
25
26
27
28

1

**I.**     **<u>TABLE OF CONTENTS</u>**

2    I.     Table of Contents.......................................................................... ii

3    II.    Table of Authorities ..................................................................... iii

4    III.   Introduction....................................................................................1

5          A.    Case Background .................................................................. 1

6          B.    Summary of Petitioner's Objections to the Report ................ 3

7    IV.   Report and Recommendation Standard of Review...........................4

8    V.    Explanation of Grounds for Objection ...........................................5

9          A.    The Report incorrectly determines that the Indian taxation authorities'
10               purpose in seeking the summons is irrelevant to the Court's inquiry.... 5

11               1.     The *Powell* framework. ...................................................6

12               2.     Petitioner's argument before the Magistrate Judge. ....................8

13               3.     The Report's erroneous determination that the Indian Taxation
14                   Authority's purpose is irrelevant to the Court's inquiry...............8

15          B.    Certain of the Report's factual determinations are improper............. 16

16          C.    The Report improperly rejects Petitioner's tax residency arguments. . 20

17               1.     The Report improperly rejects Petitioner's argument that the
18                   Convention does not authorize the summons. ...........................21

19               2.     The Report fails to consider Petitioner's U.S. tax residency as
20                   evidence of the Indian taxation authorities' improper and abusive
21                   purpose. ........................................................................23

22    VI.   Conclusion ....................................................................................24

23

24

25

26

27

28

## II.  TABLE OF AUTHORITIES

**Cases**

*Crystal v. United States*, 172 F.3d 1141, 1143–44 (9th Cir. 1999) ............................ 7

*Escobedo v. United States*, Case No. 12-cv-0471, 2013 WL 6058485 (S.D. Cal. 2013) ................................................................................................................. 22

*Lidas, Inc. v. United States*, 238 F.3d 1076 (9th Cir. 2001) ........................... 9, 13, 14

*Mazurek v. United States*, 271 F.3d 226 (5th Cir. 2001) ........................ 9, 10, 12, 14

*People v. Weaver*, 909 N. E. 2d 1195 (N.Y. Ct. App. 2009)..................................... 2

*Reisman v. Caplin*, 375 U.S. 440 (1964) .................................................................... 7

*United States v. Church of Scientology of California*, 520 F.2d 818 (9th Cir. 1975) ................................................................................................................. 15

*United States v. Clarke*, 573 U.S. 248 (2014).............................................. 7, 8, 14, 15

*United States v. Int'l Union of Petroleum and Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989)................................................................................... 17

*United States v. Jones*, 565 U.S. 400 (2012) ............................................................. 2

*United States v. Raddatz*, 447 U.S. 667 (1980) ......................................................... 5

*United States v. Stuart*, 489 U.S. 353 (1989)............................................ 9, 12, 13, 14

**Statutes**

12 U.S.C. § 3403 ...................................................................................................... 19

26 U.S.C. § 6103 ...................................................................................................... 19

26 U.S.C. § 7609 ................................................................................................. 1, 5, 7

28 U.S.C. § 636 ............................................................................................... 4, 20, 24

**Other Authorities**

Treasury Dep't Technical Explanation of the Convention and Protocol Between the United States of America and the Republic of India for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income (Jan. 1, 1991)................................................................................................ 21, 22

1 | <u>**Rules**</u>

2 | Federal Rule of Civil Procedure 72..............................................................................5

3 | <u>**Treatises**</u>

4 | Wright & Miller, Fed. Prac. & Proc. Civ. § 2210 Possession, Custody, or Control (3d
5 | ed.)........................................................................................................................17

**III.   INTRODUCTION**

**A.   Case Background**

Petitioner Sabena Puri, a United States Citizen and tax resident, has initiated this action to quash a summons issued by the Internal Revenue Service at the request of the Republic of India's taxation authorities. The IRS has served the summons upon the bank at which Petitioner holds her primary checking account—Citibank N.A.— pursuant to 26 U.S.C. § 7609. Such requests are governed by Article 28 of the Convention Between the Government of the United States of America and the Government of the Republic of India for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income ("the Convention"). Petitioner has moved to quash the summons pursuant to 26 U.S.C. § 7609(b).

Under Article 4 of the Convention, Petitioner is a tax resident of the United States—and only the United States—for purposes of taxation on her worldwide income. India accordingly may not tax her earnings within the United States. Instead, Petitioner accounts for those earnings to the IRS and pays taxes on them to the United States. There is no dispute that Petitioner is fully compliant with her United States filing and tax obligations. Further, India's tax authorities have failed to identify (either to Petitioner or to the Court) any issue with the Indian returns Petitioner has filed and Indian taxes she has paid on income which India may tax under the Convention..

Nevertheless, the Indian authorities have caused to issue a summons that is breathtakingly broad. Among other things, the summons seeks the statements from Petitioner's primary checking account for the *sixteen-year* span between April 1, 2003 and March 31, 2019. Rather than appearing relevant to any actual tax controversy between the Indian taxation authorities and Petitioner, the summons seems designed to harass Petitioner and to search for potentially embarrassing information concerning Petitioner's lifestyle that could be weaponized by the ruling BJP Party and used against Petitioner's family, which is prominent in the BJP's political opposition. By the summons' nature, it seeks the details (including date, payor, payee, and amount)

of nearly every financial transaction that Petitioner has made for the past sixteen years. The intimate nature of this request recalls to mind language from *People v. Weaver*, 909 N. E. 2d 1195 (N.Y. Ct. App. 2009), quoted favorably in Justice Sotomayor's concurrence in *United States v. Jones*, 565 U.S. 400 (2012). That case concerned GPS monitoring of vehicles on public roads. But the concerns expressed in Sotomayor's *Jones* concurrence are no less true of the bank records at issue in this case. Disclosed in a person's bank records could be things "the indisputably private nature of which takes little imagination to conjure: trips to the psychiatrist, the plastic surgeon, the abortion clinic, the AIDS treatment center, the strip club, the criminal defense attorney, the by-the-hour motel, the union meeting, the mosque, synagogue or church, the gay bar and on and on." *Id.* at 415. The production of an individual's bank statements accordingly constitutes an intimate look at some of the most private aspects of that person's life.

This Court has an obligation to protect United States citizens from abusive requests made by the tax authorities of foreign governments—even U.S. Treaty partners. In filing this action, Petitioner has moved to quash the summons on multiple grounds. The Court's task in at this juncture is to conduct a de novo determination of these issues, and accordingly review and analysis of Petitioner's submissions to the Magistrate Judge is appropriate. But she will summarize her issues here.

She believes—and has pointed to facts and circumstances plausibly suggesting—that the Indian government has sought this summons for an improper and abusive purpose. India's ruling BJP Party has come under heavy criticism for using India's taxation authorities to harass its political opposition. Petitioner's family includes a prominent leader within that opposition. Rather than seeking Petitioner's income information directly from Petitioner, the Indian authorities have leaped straight to this extraordinarily invasive and overbroad document request upon Petitioner's bank. Importantly, in seeking issuance of this summons from the IRS, the Indian taxation authorities lied to the IRS and said that they had exhausted all

1   alternatives available to them when in fact they had taken no alternative steps at all—
2   including simply requesting the necessary information from Petitioner directly.

3       Additionally, under the Convention, the Petitioner is a U.S. resident for tax
4   purposes and owes no Indian tax on her U.S. income. This both suggests that the
5   Indian authorities have sought the summons for an improper purpose and undermines
6   the IRS's authorization to seek the summons as it concerns a purported tax that is
7   "contrary to the Convention" and thus outside the scope of the Convention's Article
8   28 information exchange authorization.

9       In response to the Petition, the Government filed a Motion to Deny and Dismiss
10  the Petition [DE 16]. The Court referred this Motion to the assigned Magistrate Judge
11  for Report and Recommendation. The Magistrate has issued a Report recommending
12  that that the Government's Motion be granted and the Petition be denied. [DE 27.] In
13  making this recommendation, the Report improperly discounted the relevance of the
14  Indian taxation authorities' bad faith in seeking the summons, inappropriately
15  resolved evidentiary issues against Petitioner despite the record before it and upon a
16  Motion to Dismiss, and mischaracterized Petitioner's arguments concerning her U.S.
17  tax residency under the Convention.

18      Petitioner now files these Objections to the Report.

19  **B.**    **Summary of Petitioner's Objections to the Report**

20      Petitioner objects to the Report Recommendation on the following grounds.
21  Each of these grounds will be more fully discussed in the balance of this
22  memorandum.

23      1.    The Magistrate Judge's Report is premised upon the legal determination
24  that a foreign government's good faith is not relevant to the Court's inquiry on
25  summons enforcement. This sweeping determination is legally incorrect and would
26  require the Court to enforce a summons even if the IRS and the Court knew with
27  certainty that the foreign government made the request in bad faith and for the specific
28  purpose of abusing the taxpayer.

2.     The Report faults Petitioner for failing to provide evidence and made evidentiary determinations against the Petitioner without permitting the Petitioner an evidentiary hearing or other opportunity to submit this evidence. The Magistrate Judge also made evidentiary determinations that are directly contrary to facts the Petitioner proffered or swore to in affidavits attached to Petitioner's Response to the Government's Motion. On occasion, these facts were uncontested by the Government.

3.     The Report improperly rejected Petitioner's contentions concerning her tax residency. Petitioner addressed her residency arguments before the Magistrate Judge to two issues. First, Petitioner must be a tax resident of India under the relevant double-taxation treaty for India to be able to lawfully request a summons bearing on her global tax liability in the first instance. Second, because Petitioner is not a tax resident of India, her global income may not be taxed in India, and this is one among many facts the Court should consider in evaluating the Indian taxation authority's improper purpose for seeking the summons. Petitioner objects to the Report's rejection of both of these arguments.

For these reasons, Petitioner objects to the Report and Recommendation. She asks the Court to either redetermine these issues in Petitioner's favor and grant Petitioner the relief she requests, or else refer the matter back to the Magistrate Judge with appropriate instructions.

## IV.     REPORT AND RECOMMENDATION STANDARD OF REVIEW

Objections to a Report and Recommendation of a Magistrate Judge are governed by 28 U.S.C. § 636. Pursuant to § 646(b)(1)(C)—

> Within fourteen days after being served with a copy [of the Magistrate Judge's Report and Recommendations], any party may serve and file written objections to such proposed findings and recommendations as provided by the rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified

1  proposed findings or recommendations to which objection

2  is made. A judge of the court may accept, reject, or modify,

3  in whole or in part, the findings or recommendations made

4  by the magistrate judge. The judge may also receive further

5  evidence or recommit the matter to the magistrate judge

6  with instructions.

7  Pursuant to Federal Rule of Civil Procedure 72(b)(2), a party "may serve and file

8  specific written objections to the proposed findings and recommendations." Per Rule

9  72(b)(3), "[t]he district judge must determine de novo any part of the magistrate

10  judge's disposition that has been properly objected to." In doing so, "[t]he district

11  court may accept, reject, or modify the recommended disposition; receive further

12  evidence; or return the matter to the magistrate judge with instructions.

13  Accordingly, this Court reviews the Magistrate Judge's Report and

14  Recommendations *de novo*. *See United States v. Raddatz*, 447 U.S. 667, 673–676

15  (1980) (detailing the nature of the *de novo* determination the statute requires of a

16  district judge).

17  **V.    EXPLANATION OF GROUNDS FOR OBJECTION**

18  Petitioner objects to the Report and Recommendation's determination that the

19  Court should "deny the petition and quash the third party summons to Citibank N.A.,

20  and grant Respondent's Motion to deny and dismiss the petition." [DE 27 at 8.]

21  Consistent with Rule 72(b)(2)'s instruction to submit "specific written objections to

22  the proposed findings and recommendations," Petitioner expands upon the grounds

23  for her objections below.

24  **A.    The Report incorrectly determines that the Indian taxation**

25  **authorities' purpose in seeking the summons is irrelevant to the**

26  **Court's inquiry.**

27  This case concerns a summons issued by the IRS pursuant to 26 U.S.C. § 7609,

28  at the behest of the Republic of India's taxation authorities. The summons is shocking

1    its breadth. Notably, it seeks Petitioner's U.S. bank records for the sixteen-year period
2    from April 1, 2003 to March 31, 2019, and beyond. These records include the bank
3    statements from Petitioner's primary checking account, detailing the date, amount,
4    and sender, and recipient of all transfers Petitioner made using this account during
5    this period.

6        Petitioner moved to quash the summons pursuant to the framework articulated
7    by the Supreme Court in *United States v. Powell*, 379 U.S. 48 (1964). As her chief
8    ground, she argued that India's taxation authorities sought the summonsed
9    information not for any legitimate purpose, but rather to harass and abuse her. In this
10   connection, she notes that her family member is prominent in the opposition to India's
11   ruling BJP Party, and that the BJP Party has come under substantial criticism in the
12   Indian press for using the taxation bureaucracy to harass their political opponents in
13   this manner.

14       The Report turns aside Petitioner's arguments, however, because it determines
15   that the Indian taxation authority's purpose in seeking issuance of the subject
16   summons is simply irrelevant. Rather, per the Report, all that matters is that the IRS
17   itself acted with a proper purpose—and responding to a treaty request is always a
18   proper purpose. [*See* DE 27 at 6–8.]

19       This determination is wrong, however. And it completely derails Petitioner's
20   claims. In making this argument, this section of this memorandum will proceed in
21   three parts. First, it will briefly summarize the inquiry that this Court must undertake
22   under *United States v. Powell* and its progeny. Second, it will briefly summarize
23   Petitioner's argument that the summons was issued for an improper purpose under
24   *Powell*'s second step, and that enforcing the summons would enable an abuse of the
25   Court's process. And third, it will discuss the Report's treatment of this argument and
26   the reasons this treatment is incorrect.

27       **1.   The *Powell* framework.**

28       The Court's inquiry upon a Petition to Quash an IRS Summons, pursuant to 26

U.S.C. § 7609(b), is governed by the Supreme Court's decision in *United States v. Powell*, 379 U.S. 48 (1964) and its progeny. Per *Powell*, the trial court engages in what is effectively a two-step analysis.

Under *Powell's* first step, the Government bears the burden of proof to show four things. They are as follows: "that (1) the investigation will be conducted for a legitimate purpose; (2) the material being sought is relevant to that purpose; (3) the information sought is not already in the IRS's possession; and (4) the IRS complied with all administrative steps required by the Internal Revenue Code." *Crystal v. United States*, 172 F.3d 1141, 1143–44 (9th Cir. 1999). This burden is, admittedly, slight. "[A]bsent contrary evidence, the IRS can satisfy that standard by submitting a simple affidavit from the investigating agent." *United States v. Clarke*, 573 U.S. 248 (2014). If the Government makes this showing, the Court moves on to *Powell's* second step.

At step-two of the *Powell* analysis, the burden shifts to the taxpayer-Petitioner. *Crystal*, 172 F.3d at 1143–44 (noting that the burden shifts to the taxpayer "[o]nce the government has established the *Powell* elements"). At this stage, the taxpayer "'may challenge the summons on any appropriate ground.'" *Powell*, 379 U.S. at 58 (quoting *Reisman v. Caplin*, 375 U.S. 440, 449 (1964)). This includes as a ground that the summons was issued for an improper purpose. *Clarke*, 573 U.S. at 250.

*Powell* expanded on the basis for this rule. Per *Powell*, "the court [may] inquire into the underlying reasons for the examination" to which the summons relates. 379 U.S. at 58. This is because, "[i]t is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused." *Id.* "Such an abuse would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." *Powell* phrases this rule in the passive voice, with reference to the "underlying reason for the examination" and without limitation upon *whose* improper

1  purpose matters.

2      Additionally, at this stage a taxpayer need not conclusively establish any bad
3  faith or improper purpose. Rather, "[t]he taxpayer need only make a showing of facts
4  that give rise to a plausible inference of improper motive." *Clarke*, 573 U.S. at 254.
5  If the taxpayer makes this showing, the matter should survive the Government's
6  threshold Motion to Dismiss and the Court should permit fact discovery, either
7  through evidentiary hearing or under the Federal Rules. *Id.*

8              **2. Petitioner's argument before the Magistrate Judge.**

9      Here, Petitioner has come forth with sufficient facts to plausibly suggest that
10 India's tax authorities have caused the summons in this case to be issued for an
11 improper purpose. They are, in broad outline, as follows: (1) Petitioner's family
12 includes a prominent politician in the Indian National Congress, the chief opposition
13 to India's ruling BJP Party; (2) the BJP Government has come under heated criticism
14 for using India's taxation authorities to harass its political opponents; (3) the Indian
15 taxation authorities regularly and improperly share information with other
16 components of the Indian government; (4) the summons at issue is of startling breadth,
17 seeking 16 years of Petitioner's bank statements for her primary checking accounts,
18 which would reveal intimate details of the petitioner's purchases and lifestyle; (5)
19 during many of the years purportedly under investigation, Petitioner lived and worked
20 in the United States, filed U.S. Tax Returns, and was not an Indian tax resident subject
21 to Indian taxation; and (6) most tellingly, the Indian taxation authorities lied to the
22 IRS to obtain issuance of the summons.

23            **3. The Report's erroneous determination that the Indian Taxation**
24               **Authority's purpose is irrelevant to the Court's inquiry.**

25      The Report entirely discounts these facts, however. It does so because it
26 determines that the Indian taxation authority's purpose is immaterial to the Court's
27 inquiry. Instead, the Report determines that the Court need only inquire as to the *IRS's*
28 good faith and proper purpose. [*E.g.*, DE 27 at 6 (recommending the Petition be

1   denied because "Petitioner do[es] not show specific facts or circumstances plausibly

2   raising an inference of improper motive *on the part of the IRS*" (emphasis added) and

3   stating that "the IRS need not establish the good faith of the requesting nation"); *id.*

4   at 7 ("Petitioner's argument again focuses on the good faith of the Indian tax

5   authorities, not the IRS."); *id.* at 8 ("[Petitioner's] allegations focus on the Indian tax

6   authorities.)]. And, per the Report, fulfilling the United States' obligations under a tax

7   convention is in and of itself a legitimate purpose. [*Id.* at 3.]

8        This disregard of the Indian taxation authority's purpose for seeking the

9   summons is incorrect. Indeed, if right, it would require the Court to enforce even a

10   summons that *it knew, and the IRS conceded*, was issued for an improper purpose of

11   harassing or otherwise abusing the U.S. taxpayer. This would of course contradict the

12   deeply entrenched and uncontroversial principle, articulated by the Supreme Court in

13   *Powell*, that "a court may not permit its process to be abused." 379 U.S. at 58.

14        Close examination of the authority upon which the Report relies reveals where

15   the Report goes astray in reaching this incorrect legal conclusion. The Reports

16   conclusion appears to be based upon an overly broad reading of *Mazurek v. United*

17   *States*, 271 F.3d 226 (5th Cir. 2001), *United States v. Stuart*, 489 U.S. 353 (1989),

18   and *Lidas, Inc. v. United States*, 238 F.3d 1076 (9th Cir. 2001). These cases do state

19   that the IRS has no duty to inquire into the legitimacy of the foreign taxation

20   authorities' summons request. But, as discussed in detail below, this is properly read

21   to apply only to the IRS's threshold prima facia showing under *Powell's* first step. If

22   the taxpayer can come forward with sufficient facts plausibly suggesting that the

23   foreign nation acted with an improper purpose, that remains central to the Court's

24   inquiry. Indeed, if the taxpayer can ultimately establish that the foreign nation acted

25   with an improper purpose, quashing the summons is required to avoid complicity in

26   an abuse of the Court's process.

27        The case upon which the Report chiefly relies is the Fifth Circuit's decision in

28   *Mazurek v. United States*. The Report cites *Mazurek* for the proposition that merely

1    fulfilling the United States' obligations under a tax treaty is a legitimate purpose under

2    *Powell* [DE 27 at 3]; that any focus on the foreign taxation authority's purpose is

3    incorrect [*id.* at 4]; and that "[s]o long as the *IRS itself* acts in good faith, as that term

4    was explicated in [*Powell*], and complies with applicable statutes, it is entitled to

5    enforcement of its summons," regardless of the foreign taxation authorities' purpose

6    [*id.* at 6 (emphasis added)].

7          But, contrary to the Report's conclusions, *Mazurek* implies that where a foreign

8    nation's taxation authority has sought a summons "to harass, to gain leverage, or

9    pretextually to develop a criminal investigation," that purpose *is* relevant to the

10   Court's inquiry and will preclude enforcement of the summons. 271 F.3d at 231. The

11   relevant language of the *Mazurek* opinion appears on pages 230–232. It will be

12   discussed below.

13         The *Mazurek* Court begins its analysis under *Powell's* second step by observing

14   that "[t]o rebut the government's prima facie case, Mazurek had either to refute one

15   of the *Powell* factors that the IRS established <u>or</u> to show that enforcement in the

16   district court would amount to an 'abuse' of the judicial process." *Id.* at 230–31

17   (emphasis added). These are, in the *Mazurek* Court's view, two different things:

18   refutation of the *Powell* factors and suggestion of an abuse of process. The Court

19   analyzes these two issues discretely, in separately denominated subsections of its

20   opinion. *See id.* at 230–32.

21         With respect to rebuttal of the IRS's establishment of the *Powell* factors, the

22   *Mazurek* court does indeed conclude that the foreign taxation authority's motivation

23   is irrelevant. The Court notes that "to rebut the *Powell* requirement, Mazurek must

24   show that the *IRS* is acting in bad faith" (emphasis in original) and that "[a]s long as

25   the *IRS* acts in good faith, it need not also attest to—much lest prove—the good faith

26   of the requesting nation." *Id.* at 231 (emphasis added).

27         Importantly, however, with respect to abuse of process, the *Mazurek* court

28   strongly implies that a foreign taxation authority's purpose *is* relevant and potentially

1    preclusive. The *Mazurek* Court makes the threshold observation that a taxpayer-
2    petitioner may quash a summons if enforcement "would amount to an 'abuse' of the
3    judicial process" and that "[a]n abuse of the judicial process occurs when a summons
4    is sought for an 'improper purpose, such as . . . harassing the taxpayer, put[ting]
5    pressure on him to settle a collateral dispute' or obtaining information solely for a
6    criminal prosecution under the guise of a civil liability investigation." *Id.* at 231. As
7    did the Supreme Court in *Powell*, the Fifth Circuit in *Mazurek* frames this rule in the
8    passive voice, without limiting the scope of the inquiry to the IRS's purpose in issuing
9    the summons. *See id.* The *Mazurek* Court proceeded no further with this analysis,
10   however, beyond observing that the taxpayer-petitioner before it "has adduced no
11   evidence, and indeed has not even alleged, that the summons is being used to harass,
12   to gain leverage, or pretextually to develop a criminal investigation." *Id.* Instead, the
13   *Mazurek* Court observed that "to the contrary, Mazurek concedes that the [foreign
14   taxation authorities'] sole purpose is to determine his civil liability for French taxes."
15   *Id.* This was crucial to the Court's determination. The Court held that "Requiring
16   district courts and the IRS to look into the good faith of the requesting country's
17   investigation would—*at least when, as here, the taxpayer concedes that the treaty
18   partner is interested only in civil tax collection*—unwisely necessitate an inquiry into
19   the propriety of the FTA's actions under French law." *Id.* at 231–32 (emphasis
20   added).[1]

21        But in the instant case, the Taxpayer-Petitioner *does* allege sufficient facts to
22   raise the plausible inference that the Indian taxation authorities have sought issuance

---

[1] Beginning on Page 16 of her Response to the government's Motion, Petitioner makes the argument that India's bad faith is relevant to the Court's inquiry. [DE 21 at 17.] This Response addressed *Mazurek* as misreading *Stuart* to to eliminate the relevance of a requesting nation's good faith. [*Id.*] However, the better reading of *Mazurek* is that which these Objections articulate: although *Mazurek* held that a foreign nation's good faith is not relevant to rebuttal of the *Powell* factors, it is relevant to what *Mazurek* characterizes as a separate "abuse of process" inquiry mandated by *Powell*.

1    of this summons not for the purpose of determining her civil tax liabilities, but instead
2    to harass her and her and her family. If the *Mazurek* Court were confronted with
3    Petitioner's case, it likely would have reached a very different conclusion.

4           Next, the Report relies upon the Supreme Court's decision in *United States v.*
5    *Stuart* to conclude that a foreign taxation authority's improper and abusive purpose is
6    irrelevant to this Court's inquiry. [*See* DE 27 at 6 (citing *Stuart* for the proposition
7    that "[s]o long as the IRS itself acts in good faith, as that term was explicated in
8    [*Powell*], and complies with applicable statutes, it is entitled to enforcement of its
9    summons").]

10          However, *Stuart* decided the scope of the courts' analysis under *Powell's* first
11   step. That is, *Stuart* speaks to the IRS's burden to establish the *Powell* factors
12   (including that the IRS issued the summons for a proper purpose) in the first instance.
13   It does not address whether the Court must enforce a summons when a taxpayer has
14   come forward with facts on their own that plausibly suggest the foreign taxation
15   authority seeks the summons for an abusive purpose. Indeed, *Stuart* reaffirms *Powell*,
16   which holds that a court *must not* permit its process to be abused, without limitation
17   as to the source of the abuse.

18          The narrow scope of *Stuart* is apparent from a close reading of that decision.
19   *See* 489 U.S. 356–59. At pages 356–359, the Supreme Court recounts the posture in
20   which the case came before it. Canada's taxation authorities asked the IRS to issue a
21   summons to help it conduct "a criminal investigation, preliminary stage." *Id.* at 357.
22   After the district court decided to enforce the summons, the Ninth Circuit reversed.
23   The Ninth Circuit observed that United States law prohibits the IRS from summonsing
24   a taxpayer after a certain stage in a domestic federal criminal tax investigation.
25   Accordingly, the Ninth Circuit held that, for the IRS to establish its own good faith
26   under *Powell's* first step, "'the IRS must make an affirmative statement' that
27   Canadian authorities are acting in good faith and that their investigation has not yet
28   reached that stage." *Id.* at 358. The Ninth Circuit reasoned that "the burden of proof

1   on this point rests initially with the IRS rather than the taxpayer attempting to quash
2   the summons . . . because the IRS 'can consult with Canada's competent authority
3   and can be expected to have greater familiarity with Canadian administrative
4   procedures." *Id.* The Ninth Circuit reversed the district Court "because the affidavits
5   submitted by the IRS failed to state that Revenue Canada's investigation of
6   respondents had not yet reached a point analogous to an IRS referral to the Justice
7   Department." *Id.*

8        In reversing the Ninth Circuit's determination, *Stuart* did not hold that the
9   foreign taxation authority's purpose in seeking the summons was *never* relevant.
10  Rather, it held only that the IRS need not investigate and establish the legitimacy of
11  the foreign nation's purpose in the first instance, to establish its prima facia case under
12  *Powell*'s first step.

13       Finally, the Report relies upon the Ninth Circuit's decision in *Lidas, Inc. v.*
14  *United States*, 238 F.3d 1076 (9th Cir. 2001). The Report cites *Lidas* for the
15  proposition that, in seeking enforcement of a summons sought on behalf of a treaty
16  partner, "the IRS need not establish the good faith of the requesting nation." [DE 27
17  at 2 & 6.] *Lidas* is a Ninth Circuit decision and is of course binding upon this Court.
18  But, contrary to the Report, *Lidas* does not state that the foreign tax authorities'
19  purpose or bad faith is *never* relevant to the Court's inquiry. Rather, as in *Stuart*, the
20  Ninth Circuit's *Lidas* decision speaks only to whether the IRS must establish the
21  requesting nation's good faith in the first instance, under step one of the *Powell*
22  analysis.

23       Consistent with *Stuart*, *Lidas* holds that the IRS does not have an initial burden
24  to investigate the requesting nation's purpose and submit an affidavit attesting to that
25  purpose's legitimacy. *See* 238 F.3d at 1081–82. *Lidas* affirmed, however, that "[o]nce
26  the IRS establishes a prima facie case for enforcement of its summons under *Powell*,
27  the burden shifts to the taxpayer who 'may challenge the summons on any appropriate
28  ground.'" *Id.* at 1082 (quoting *Powell*, 379 U.S. at 58). This includes *Powell's*

---

1    admonition that a court may never allow an abuse of its process, whether at the behest
2    of the IRS or any other actor, such as the Indian taxation authorities in the instant case.
3    *Powell*, 379 U.S. at 58.

4         In *Lidas* itself, the taxpayers sought "to rebut the prima facia case entitling the
5    United States to summary enforcement of the summons by *demonstrating the IRS's*
6    *improper purpose* in issuing the summons." 238 F.3d at 1082 (emphasis added).
7    Specifically, the taxpayers argued that the relevant treaty conflicted with the Right to
8    Financial Privacy Act, 12 U.S.C. § 3401, *et seq.*, which prohibits government
9    disclosure of financial records to third parties. 238 F.3d at 1083. The *Lidas* taxpayers
10   did not challenge the good faith or bad purpose of the *foreign taxation authority*.
11   Accordingly, *Lidas* does not speak to when or whether a foreign taxation authority's
12   bad purpose may be considered.

13        Consistent with the foregoing analysis, the proper reading of the law is that the
14   Supreme Court meant what it said in *Powell*: "It is the court's process which is
15   invoked to enforce [an] administrative summons and a court may not permit its
16   process to be abused." 379 U.S. at 58. This is true whether the IRS itself seeks to
17   abuse the Court's process, or whether the requesting foreign nation does so. While
18   *Stuart*, *Mazurek*, and *Lidas* correctly hold that the IRS need not investigate and
19   establish the foreign taxation authorities' good faith under the first of *Powell's* two-
20   step analysis, these cases did not hold that a foreign authorities' purpose is *never*
21   relevant. Rather, a Court considering an IRS summons issued pursuant to a foreign
22   nation's treaty request must still evaluate whether the taxpayer "can point to specific
23   facts or circumstances plausibly raising an inference of bad faith." *United States v.*
24   *Clarke*, 573 U.S. 248, 254 (2014). This includes a circumstance in which the foreign
25   tax authority seeks a summons to harass or abuse a taxpayer, or otherwise use the
26   information obtained for leverage in a collateral dispute.

27        Again, this makes perfect sense. Otherwise, this Court would be bound to
28   enforce a summons that it knew, and the IRS conceded, was requested by the foreign

1     nation for the purpose of harassing and abusing a taxpayer.

2          As discussed at length in Petitioner's briefing before the Magistrate Judge (and
3     briefly summarized in this memorandum), Petitioner has met her burden under *Clarke*
4     to point to specific facts or circumstances plausibly suggesting bad faith. This includes
5     pointing to the facts that Indian taxation authorities seek extraordinarily detailed and
6     personal information of the Petitioner, including bank statements that detail her
7     transactions from her primary checking account over the last sixteen years. And they
8     have lied to the IRS to obtain issuance of the summons seeking this intimate
9     information by representing to the IRS that they had exhausted efforts to obtain this
10    information using domestic means when in fact they had taken no such steps.

11         Accordingly, consistent with *Clarke*, the Report should have recommended that
12    the Court deny the Government's Motion to Dismiss and permit Petitioner to engage
13    in additional discovery to flesh out her claims. *See* 573 U.S. at 254; *United States v.*
14    *Church of Scientology of California*, 520 F.2d 818, 824 (9th Cir. 1975). This
15    discovery could include at least (1) examination of the involved IRS personnel to
16    determine what India's taxation authority represented to them about the Indian
17    investigation and the necessity of the summonsed information; (2) examination of the
18    Indian taxation authority to reveal the actual nature of the investigation, the extent of
19    its information sharing with other components of the Indian government, and whether
20    they have been asked to investigate Petitioner due to her family's status as prominent
21    members of the Indian government's opposition, as well as any additional
22    misrepresentations the Indian authorities made to the IRS to obtain issuance of the
23    summons; and (3) discovery directed to third-party records custodian Citibank, N.A.,
24    to develop the record of what information it has in its possession responsive to the
25    summons. The Parties could then proceed to an evidentiary hearing on the issue of
26    whether the Indian taxation authorities did in fact request the summons for an
27    improper purpose, such that its enforcement would constitute an abuse of process.

28         Petitioner therefore requests that this Court sustain her objections and permit

---

**OBJECTION TO REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE**

1   the discovery she seeks, or else remand the matter back to the Magistrate Judge for
2   evaluation under the correct legal standard.

**B.      Certain of the Report's factual determinations are improper.**

4       Petitioner also objects to certain evidentiary conclusions underlying the Report.
5   The Report makes these evidentiary determinations against Petitioner even though
6   this matter comes before the Court upon the Government's Motion to Dismiss and the
7   Magistrate Judge did not convert the Government's Motion to one for Summary
8   Judgment, making evidentiary determinations improper. Moreover, in some
9   instances, the Report rejects Petitioner's factual representations even though they
10  were essentially undisputed.

11      Specifically, the Taxpayer-Petitioner objects to the following factual
12  determinations in the Report. They are presented and discussed in numbered
13  subsections below, in the order they appear in the Report and Recommendation.

14  **1.      The Report misstates the scope of the summons issued by the IRS.**
15  The Report states that the summons seeks four categories of documents: Account
16  opening documents; Account signature documents; Know-Your-Customer and
17  Customer Due Diligence records; and Correspondence and memorandum files related
18  to the accounts. [DE 27 at 2.] But this is incomplete. The summons also seeks 16
19  years' worth of the Taxpayer-Petitioner's monthly account statements. [*See* DE 1-1
20  at 3.] And it is these statements which contain intimate details about Petitioner's daily
21  life which she contends the Indian authorities seek to misuse.

22  **2.      The Report disregards Petitioner's assertion that the Indian
23  taxation authorities lied to the IRS about exhausting Indian domestic process
24  (and thereby suggesting that Petitioner had somehow been uncooperative in an
25  Indian tax investigation), to obtain issuance of the summons. [DE 27 at 6.]** The
26  Report does so even though this fact was not contested by the Government. Rather
27  than find that the Indian tax authorities made a misrepresentation to the IRS, the
28  Report observes that the representation wasn't legally required and that "no one

1  contends that the Indian tax authorities already have the requested information in their
2  possession." [Id. at 7.] But this is beside the point. The Indian taxation authority's
3  willingness to be untruthful to the IRS to obtain issuance of the summons bears
4  strongly on its good faith in making the request.

5      **3.    The Report finds "no evidence in the record that anyone, including**
6  **Petitioner, has all the requested information in their or her possession in India**
7  **such that it would be available to Indian authorities using any legal process in**
8  **India." [DE 27 at 7.]** This conclusion is flatly contradicted by the record. Petitioner
9  states in her briefing that she could have obtained the information pursuant to an
10  Indian request. [DE 21 at 8, 18.]She has attached an opinion from retired Indian
11  Supreme Court Chief Justice V.N. Khare attesting that Indian authorities have the
12  ability to obtain this information directly from Petitioner in a manner that might give
13  her a meaningful opportunity to protect her privacy interests in certain of the
14  information that her bank statements may reveal. [DE 21-1 at ¶6–8; DE 21-2 at
15  ¶2.1.1.] And, of course, it is well established that if a taxpayer can obtain documents
16  from her bank, they are in that taxpayer's possession, custody, or control for the
17  purpose of a summons response. *E.g.*, Wright & Miller, Fed. Prac. & Proc. Civ. §
18  2210 Possession, Custody, or Control (3d ed.); *accord United States v. Int'l Union of*
19  *Petroleum and Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989)
20  ("Control is defined as the legal right to obtain documents upon demand.") Again, the
21  Government did not contest this factual proposition.

22      **4.    The Report finds that "there is nothing in the record that describes**
23  **the nature of [Petitioner's] Citibank accounts other than reference to a 401(k)**
24  **account(s)." [DE 27 at 7.]** For this reason, the Report discounts Petitioner's argument
25  "that bank records could conceivably contain private information such as personal
26  expenses that may (or may not) be unnecessary to her income tax liability in India."
27  [Id.] But Petitioner proffered the nature of her Citibank accounts at length in her
28  briefing before the magistrate. [DE 1 at ¶13; DE 21 at 11–12, 22.] It is the concern

1  upon which her entire argument is based. [*Id.* at 11–12.] Petitioner also attested to this
2  fact in affidavits before the Magistrate Judge. [DE 21-1 at ¶12.] And this fact, too,
3  was not contested by the Government.

4      **5.      The report finds that "[a]lthough Petitioner argues that she has a**
5  **family member who is in the political opposition, she does not suggest any way**
6  **in which her bank account information in the United States could be used to**
7  **harass the political opposition." [DE 27 at 7.]**  This determination is incorrect.
8  Petitioner does not merely "argue" that she has a family member who is in the political
9  opposition. She has alleged it [DE 1 at ¶17; DE 21 at 18] and (going beyond what is
10  required upon a Motion to Dismiss) she has sworn to it in an affidavit [DE 21-1 at
11  ¶12–14]. And, again, the Government does not contest this fact. Petitioner's family
12  member is deeply entrenched in the leadership of the Indian National Congress, the
13  present Indian government's chief opposition.

14      Perhaps more importantly, however, Petitioner has, in fact, suggested a way
15  that the summons could be used for an abusive purpose. First, mere issuance of the
16  summons for an improper purpose is a form of harassment. No citizen likes to have
17  their government rooting through the intimate details of their private lives, including
18  their financial affairs, over the course of 16 years. Second, Petitioner suggests that the
19  Indian government has sought the summons to search for embarrassing and politically
20  useful personal information about Petitioner that it could employ to her family's
21  disadvantage. Petitioner should not (and does not) have to prove that any such
22  embarrassing information actually exists. That is irrelevant to the Indian authorities'
23  malign purpose in having the summons issued to root about for damaging information
24  themselves. And it would defeat the relief Petitioner seeks if she were required to
25  detail any damaging information they may find.

26      Finally, Petitioner has sworn in her affidavit—and attached supporting Indian
27  press clippings showing—that the ruling Indian government has been heavily
28  criticized for using the Indian tax authorities to harass its opposition. [DE 21 at 18;

---

De 21-1 at ¶12–14; DE 21-5.] This assertion is unaddressed by the Government in opposing the Petition. The Report accordingly should not have resolved the matter against Petitioner at this stage.

**6.    The Report determined that "Petitioner's fear that the Indian tax authorities may attempt to share her financial information with other Indian government agencies not involved in income tax liability is conclusory and speculative." [DE 27 at 7.]**  As an aside, this statement undercuts the Reports prior conclusion that Petitioner failed to suggest a way in which her summonsed information might be abused.

Regardless, this conclusion is contradicted by the evidence. Petitioner did not allege only some vague and speculative possibility that the India taxation authorities might share her information. She alleged that the Indian taxation authorities have regularly shared such information in the past, prompting protests from the United Kingdom and Germany. [DE 21 at 19; DE 21-1 at ¶9–11; DE 21-2 at ¶2.2.] She has also pointed to reports of an information sharing memorandum between the Indian taxation authorities and the Indian equivalent of the U.S. Securities Exchange Commission requiring regular and automatic information sharing between the two entities. [DE 1-4.] Further, she has attached the opinions of the Indian equivalent of a retired Supreme Court Chief Justice attesting that India's taxation authorities regularly share information gathered in tax investigations with other components of the Indian government. [DE 21-2 at ¶2.2.][2]

---

[2] This information sharing is contrary to the mandates the U.S.–India Convention. At Article 28 ¶1, "if information is originally regarded as secret in the transmitting State, it shall be disclosed only to persons or authorities (including courts and administrative bodies) involved in the assessment, collection, or administration of, the enforcement or prosecution in respect of, or the determination of appeals in relation to, the taxes which are the subject of the convention." Further, "[s]uch persons or authorities shall use the information only for such purposes." Of course, the secrecy of tax and financial information is safeguarded by United States law. *See* 26 U.S.C. § 6103(a); 12 U.S.C. § 3403, *et seq.* Petitioner asks that if any information is ultimately

1    Against this, the Government again submits nothing that contradicts
2  Petitioner's claims. The Report is correct that the Government has submitted an IRS
3  declaration stating that "any improper use of the information would be protested and,
4  if continued, would lead to recommendations to terminate the Convention." [DE 27
5  at 7.] But this statement only speaks to the IRS's reaction to any information sharing.
6  It does not contradict Petitioner's evidence that such improper sharing actually occurs
7  despite the threat of eventual protest. Accordingly, the Report's finding that
8  Petitioner's concern is speculative and conclusory is erroneous.

9    Under 28 U.S.C. § 636(b)(1)(C), this Court must make a de novo determination
10  of each of the factual issues identified above. The Court should resolve them in
11  Petitioner's favor at this stage based upon the evidence proffered and submitted before
12  the Magistrate Judge and for the reasons discussed in these Objections. Based upon
13  these determinations, the Court should grant Petitioner the relief she seeks.

14    **C.     The Report improperly rejects Petitioner's tax residency arguments.**

15    In her submissions before the Magistrate Judge, Petitioner argued that—by the
16  terms of the relevant double-taxation treaty pursuant to which the IRS issued its
17  summons—Petitioner is not an Indian tax resident subject to Indian taxation. Rather,
18  she is a tax resident of the United States. Petitioner argued that this was relevant to
19  her Petition for two reasons. *First*, the IRS has issued the summons pursuant to Article
20  28 of the United States Tax Convention With the Republic of India (1991). But this
21  Convention authorizes summonses only in connection with taxes covered by the
22  Convention and, because the Convention allocates Petitioner to the United States for
23  global income tax purposes, there can be no such Indian tax to which the summonsed
24  account relates. *Second*, Petitioner submitted opinions from Retired Chief Justice
25  V.N. Khare and former revenue chief R.K. Goyal analyzing the question of

shared with India's taxation authorities pursuant to the summons, it be done so on the precondition and after seeking prior confirmation from the Indian authorities that Article 28's confidentiality provisions be honored.

1    Petitioner's tax liability under Indian law, and concluding that Indian courts, too,
2    would recognize that Petitioner's global income is not liable to be taxed in India
3    pursuant to the Convention. Petitioner accordingly urged the Court to consider this as
4    one of the many facts she has identified that plausibly suggest the Indian authorities'
5    bad faith in seeking issuance of the summons. The Report incorrectly rejects both
6    these arguments. Both will be addressed in turn.

7            **1. The Report improperly rejects Petitioner's argument that the**
8                         **Convention does not authorize the summons.**

9         The Report addresses Petitioner's first argument—concerning the
10   Convention's authorization of the summons—at pages 3 through 5. The Report rejects
11   it for two reasons. First, the Report incorrectly characterizes Petitioner's argument as
12   premised upon Article 1 of the Convention's definition of the Convention's scope.
13   The Report correctly observes that the Convention states that information sharing
14   under Article 28 of the Convention "is not restricted by Article 1." [DE 27 at 3.] But,
15   as the Treasury Department's Technical Explanation of the Article 28 of the
16   Convention makes clear, this provision has no applicability to Petitioner's case:

17                 Paragraph 1 states that information exchange is not
18                 restricted by Article 1 (General Scope). *This means that*
19                 *information may be requested and provided under this*
20                 *Article with respect to persons who are not residents of*
21                 *either Contracting State.* For example, if a third country
22                 resident has a permanent establishment in India which
23                 engages in transactions with a U.S. Enterprise, the United
24                 States could request information with respect to that
25                 permanent establishment, even though it is not a resident of
26                 either Contracting State.
27   Treasury Dep't Technical Explanation of the Convention and Protocol Between the
28   United States of America and the Republic of India for the Avoidance of Double

1     Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income,

2     Article 28 (Jan. 1, 1991) (emphasis added) (available at https://www.irs.gov/pub/irs-

3     trty/inditech.pdf). Here, however, the Petitioner is a tax resident of the United States,

4     not a third-party country. The language the Report cites concerning Article 1's

5     relationship to Article 28 is simply irrelevant.

6              Rather, the limitation that removes Petitioner from the Article 28's coverage is

7     the following language: "The Competent authorities of the Contracting States shall

8     exchange such information (including documents) as is necessary for carrying out the

9     provisions of this Convention or for the domestic laws of the Contracting States

10    concerning taxes covered by the Convention *insofar as the taxation thereunder is not*

11    *contrary to the Convention*." Tax Convention with the Republic of India, Article 28

12    ¶1 (1991) (emphasis added). Here, for the reasons articulated in Petitioner's briefing

13    before the Magistrate Judge, the proposed taxation *is* contrary to the Convention. Per

14    Article 4 of the Convention, Petitioner is a tax resident of the United States, and for

15    that reason her global income is not liable to be taxed in India. *See* Technical

16    Explanation, Article 28 ("Paragraph 5 specifies the taxes in respect of which

17    information may be exchanged. . . . In India, the Article applies to the income tax, the

18    wealth tax, and the gift tax.").

19              The Convention is part of U.S. law. This Court may accordingly determine

20    whether it authorizes the summons the IRS seeks to enforce. This requires evaluation

21    of whether the treaty allocates Petitioner to the United States or India for global

22    taxation purposes. In support of this proposition, Petitioner cited to the Magistrate

23    Judge the case of *Escobedo v. United States*, Case No. 12-cv-0471, 2013 WL 6058485

24    (S.D. Cal. 2013). In *Escobedo*, the Court analyzed a taxpayer's tax residency under a

25    substantially similar tax convention between the United States and Mexico. Per

26    *Escobedo*, if Article 4 of the U.S.–Mexico convention allocated the taxpayer to

27    Mexico, he would not be subject to certain United States tax. The Report dismisses

28    this authority on the grounds that *Escobedo* involved a merits determination of a

1  party's tax liability. But this is a distinction without a difference. The issue both in
2  *Escobedo* and in this case is the same: whether the taxpayer is subject to a foreign
3  nation's tax on their worldwide under the applicable convention. If the tax to which
4  the summons purports to relate is contrary to the Convention, Article 28 does not
5  authorize the summons.

6      Second, the Report rejects Petitioner's argument because, according to the
7  Report, to determine Petitioner's tax residency, "at a minimum, the court would have
8  to examine the very documents requested in the summons in order to make this
9  determination." [DE 27 at 4.] Per the Report, this means that "Petitioner's argument
10  makes no sense," presumably because it would defeat Petitioner's efforts to keep her
11  bank records private for the Court to review them to make a residency determination.

12      But this is wrong. First, it is not correct that the Court would need to analyze
13  Petitioner's bank records to make a tax residency determination under Article 4 of the
14  Convention. The statements may be relevant, but Petitioner can instead testify to the
15  pertinent information they contain herself. She can present whatever evidence in
16  support of her U.S. Tax residency that she wishes. More fundamentally, though,
17  turning the bank statements over for review by *this court* is a far different proposition
18  than turning them over to the Indian taxation authorities.

19      **2. The Report fails to consider Petitioner's U.S. tax residency as**
20      **evidence of the Indian taxation authorities' improper and abusive**
21      **purpose.**

22      The Report addresses Petitioner's second argument concerning her tax
23  residency at page 6. The Report states that "Petitioner repeats her contention that she
24  is not a tax resident of India" but "Petitioner provides no authority for the proposition
25  that her income tax liability or nonliability in India must be analyzed here before the
26  IRS summons can be enforced."

27      In doing so, the Report appears to conflate Petitioner's first and second
28  arguments concerning her tax residency. But, as a second and separate argument,

1   Petitioner asserts that the lack of a tax liability on global income under *Indian* law
2   (which includes Indian courts' interpretation of the Convention), is evidence relevant
3   to the Indian authorities' improper purpose in making the summons request. In
4   support of Petitioner's position that her global income is not liable to be taxed in India,
5   Petitioner offers the opinions of two esteemed legal and tax experts specifically
6   analyzing the facts of her case in light of Indian legal principles. The Government has
7   offered little to contradict this analysis, other than a conclusory statement by the IRS
8   that the Indian taxation authorities have an open examination to which the summons
9   purportedly relates.[3] Accordingly, the Report should have found that under Indian
10  law, Petitioner likely has no Indian income tax obligation and considered this as
11  another fact plausibly suggesting the Indian taxation authorities' bad faith and
12  improper purpose in seeking the summons.

13  **VI.     CONCLUSION**

14          Petitioner objects to the Magistrate Judge's Report and Recommendation that
15  the Court grant the Government's Motion to Dismiss and deny her Petition. Per 28
16  U.S.C. § 636(b)(1)(c), the Court determines *de novo* those portions of a Report and
17  Recommendation that are objected to.

18          In making her objections, Petitioner has pointed to three ways in which the
19  Report and Recommendation goes astray. First, the Report incorrectly concludes that
20  a foreign nation's bad faith and improper purpose in making a treaty request is never
21  relevant to summons enforcement proceedings. Second, the Report makes incorrect
22  and inappropriate factual determinations. And third, the Report improperly rejects her
23  arguments concerning tax residency. The Court should correct these errors in
24  conducting its redetermination, and deny the Government's Motion. Alternatively,
25  the Court may correct these errors and remand the case for further proceedings before
26  the Magistrate Judge consistent with the Court's decision.

---

[3] As the summons seeks only Petitioner's records, any mention of third-parties within the requested records should be redacted.

Dated: December 23, 2020    Respectfully Submitted,

          /s/ *Scott E. Schutzman*
          Scott E. Schutzman